UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARY K.,[1]

      **Plaintiff,**

v.                                                       **Civil Action 2:24-cv-3734**
                                                          **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**OPINION AND ORDER**

Plaintiff, Christina L. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application Supplemental Security Income ("SSI"). This matter is before the Court for a ruling on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), and the administrative record (ECF No. 7). Plaintiff has not filed a Reply. For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

                **I.**        **BACKGROUND**

Plaintiff protectively filed her SSI application January 2020, alleging that she became disabled in November 2001. In 2021, an Administrative Law Judge issued an unfavorable determination, which became final in 2022. After Plaintiff sought judicial review of that final determination in this Court, the parties successfully moved jointly for remand. Upon remand, a

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

second Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") both appeared and testified. On March 27, 2024, the ALJ issued an unfavorable determination which became final when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that second final determination. She asserts that the ALJ erred in two ways when considering prior administrative findings from state agency psychologist, David Dietz, PhD. (Pl.'s Statement of Errors 6–13, ECF No. 10.) The Commissioner contends that Plaintiff's contentions lack merit. (Def.'s Mem. in Opp'n, 4–8, ECF No. 12.) The Court agrees.

## II. THE ALJ'S DECISION

On March 27, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 327–45.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since the alleged onset date of May 18, 2020. (*Id.* at 329.) At step two, the ALJ found that

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

Plaintiff had the following severe impairments: bipolar/depressive disorder; anxiety disorders; pervasive developmental disorder not otherwise specified (NOS); unspecified neurodevelopmental disorder; unspecified caffeine-related disorder; other specific personality disorder with mixed personality features; attention deficit hyperactivity disorder (ADHD); and borderline personality disorder. (*Id*.) The ALJ also found that Plaintiff's obesity was not severe. (*Id*. at 330.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> [Plaintiff] has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple tasks without a production rate pace; interact occasionally with coworkers and supervisors on matters limited to the straightforward exchange of information without negotiation, persuasion, or conflict resolution, where work duties do not require interaction with the public; and adapt to occasional changes.

(*Id.* at 332.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 344.) At step five, the ALJ, relying upon testimony from VE, found that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and RFC capacity could perform, including the representative occupations of cleaner II, hand packer, and hospital cleaner. (*Id.* at 344–45.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 345.)

### III. STANDARD OF REVIEW

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Even though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

IV. ANALYSIS

As noted above, Plaintiff contends that the ALJ erred in two ways when considering prior administrative findings from state agency psychologist, Dr. Dietz. (Pl.'s Statement of Errors 6–13, ECF No. 10.) Dr. Dietz reviewed Plaintiff's file at the reconsideration level and found, in pertinent part, that Plaintiff experienced moderate limitations in her ability to concentrate, persist, or maintain pace, and that she was consequently limited to work "in an environment where production standards and schedules are flexible . . . ." (R. at 68.) Plaintiff first argues that this statement demonstrates that Dr. Dietz found that she was limited to work featuring a flexible production standards, but the ALJ failed to account for that restriction in her RFC. (Pl.'s Statement of Errors 11, ECF No. 10.) Plaintiff also maintains because Dr. Dietz found that she was limited to work featuring a flexible schedule (*i.e.*, the ability to take unscheduled or extra breaks or come to work late or leave early), the ALJ erred in failing to account for that restriction or adequately explain why it was omitted from her RFC. (*Id.* at 11–13.) Both contentions lack merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. § 416.945(a)(1). The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §

---

[4] Because Plaintiff's SSI application was filed in 2020, it is governed by regulations that apply to applications filed after March 27, 2017.

416.920c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. § 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*.

Here, the ALJ began by explaining that she generally found Dr. Dietz's findings only partly persuasive. The ALJ wrote as follows:

> These prior administrative medical findings are persuasive in part. [The other state agency reviewer's and] Dr. Dietz's findings are supported by reference to the claimant's subjective reports, and to a lesser extent a review of the record, as they cited only to the subjective reports in their RFC analysis. However, this is poor support due to the inconsistencies between the claimant's subjective reports and the record, as discussed in detail above.

(R. at 340–41.)

The ALJ then discussed Dr. Dietz's specific finding that Plaintiff was limited to work "in

6

an environment where production standards and schedules are flexible." (*Id.* at 68.) She wrote as follows:

> At the reconsideration level, Dr. Dietz limited production to "flexible" standards and schedules. I adopted this in part by precluding a production rate pace, which encompasses both strict time and production demands, and allows for end of day goals with some flexibility in the pacing of daily tasks. However, again, I did not interpret this to mean that the claimant would require self-directed or extra breaks, as the representative suggested with her questions to the vocational expert. If that were Dr. Dietz's intent, again, it would render his findings internally inconsistent, as this suggests accommodated rather than competitive work and would require a finding of "disabled." Therefore, while I considered his finding that there should be a pace limit, I adopted such a limit using vocationally relevant and policy compliant terms. His finding is therefore persuasive in part, but not persuasive to the extent it could be interpreted to support greater limitations, as it was not well supported and is otherwise inconsistent with the record, to that extent, as discussed throughout this decision.

(*Id*. at 341.)

As this discussion demonstrates, the ALJ explained that Dr. Dietz's finding that Plaintiff was limited to environments where production standards and schedules are flexible meant that Dr. Dietz found that Plaintiff had a pace limitation. (*Id*.) The ALJ addressed that pace limit by including in Plaintiff's RFC a limit to simple tasks without a production rate pace. (*Id*.) Plaintiff first contends, however, that this pace limit did not adequately account for Dr. Dietz's pace limit. (Pl.'s Statement of Errors 11, ECF No. 10.) But Dr. Dietz determined that Plaintiff was capable of work where "production standards and schedules were flexible," thereby indicating that Plaintiff could handle some production pace standards, provided they were elastic. (R. at 68.) The ALJ, however, limited Plaintiff to work with no production rate pace. Accordingly, the ALJ included in Plaintiff's RFC a pace limit that was more restrictive than the one found by Dr. Dietz. Plaintiff cannot credibly complain that the ALJ erred by doing so. *Putnam v. Comm'r of Soc. Sec*., No. 2:20-CV-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) (explaining that "[a]n ALJ does not commit reversible error when discounting a medical opinion or an

administrative finding because the ALJ determines that a claimant is more limited than opined.")

Plaintiff next contends that the ALJ wrongly determined that Dr. Dietz did not find that she needed flexibility in her work schedule. (Pl.'s Statement of Errors 11–13, ECF No. 10.) She asserts that the ALJ ignored the "plain language used by Dr. Dietz" when arriving at this conclusion. (*Id*. at 11–12.) Nevertheless, Dr. Dietz did not use the term "work" when finding that Plaintiff was limited to "environment[s] where production standards and schedules are flexible." (R. at 68.) It was therefore equally reasonable for the ALJ to determine that Dr. Dietz had found that Plaintiff needed flexibility in her "production standards and *production* schedule" or that Dr. Dietz had found that Plaintiff needed flexibility in her "production standards and *work* schedule." The Court need not, however, determine whether the ALJ was required to choose one interpretation over the other because the ALJ further explained that to the extent Dr. Dietz found that Plaintiff needed greater limits (*i.e*., a flexible work schedule), that finding was unpersuasive because it was not well supported or consistent with the record, which he discussed throughout his decision. (R. at 341.)

And indeed, the ALJ discussed those issues thoroughly. As Plaintiff notes, Dr. Dietz found that she had moderate limitations in the ability to concentrate, persist, and maintain pace. But the ALJ explained that Plaintiff's purported problems in these areas lacked objective validation. (R. at 338. ("[Plaintiff] consistently [reported] problems with concentration and attention, which were not objectively tested . . . ." ).) Therefore, the ALJ clearly considered the supportability factor and found it wanting. Moreover, Plaintiff fails to point to record evidence contradicting the ALJ's analysis. Consequently, the Court finds that the ALJ's supportability analysis was substantially supported by the record.

The ALJ further explained that Plaintiff's subjective complaints about concentration and

8

attention were inconsistent with other record evidence including, specifically, her wide range of daily activities. (*Id*.) The ALJ accurately explained that the record contained evidence of all the following. Plaintiff reportedly babysat three-to-four children almost daily at her parent's home. (*Id*. at 337, 5F/7, 308.) Plaintiff babysat by herself. (*Id*. at 337, 6F/5.) Plaintiff helped her sister with her children twice a week. (*Id*. at 337, 6F/1, 312.) Plaintiff engaged in projects like designing her yard for Halloween, getting her house in order, and making a diorama designing board games four-to-six hours a day for two-and-half weeks. (*Id*. at 337, 6F/9, 320, 648, 316.) Plaintiff also devoted substantial amounts of time to listening to audiobooks and music, as well as sometimes watching television. (*Id*. at 337, 304, 320, 648.) The ALJ noted, too, that even though some of her activities were variable, Plaintiff consistently reported spending many hours a day using her phone and computer, even when she sometimes claimed to have poor focus. (*Id*. at 338, 5F/7, 6F/1, 6F/5, 6F/9, 8F/1, 10F/5, 304, 312, 316, 320.) Therefore, the ALJ clearly considered the consistency factor and explained that it was lacking. Plaintiff fails to point to record evidence that contradicts the ALJ's explanation. Consequently, the Court finds that the ALJ's consistency analysis was substantially supported by the record.

In sum, the ALJ did not reversibly err when considering Dr. Dietz's administrative findings. The ALJ included in Plaintiff's RFC a pace limit that surpassed the pace limit found by Dr. Dietz. To the extent Dr. Dietz found that Plaintiff needed a flexible work schedule, the ALJ discounted that finding because it lacked support and was inconsistent with other record evidence.

## V.  CONCLUSION

For all these foregoing reasons, the Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE